UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
_____

PRINCESS M. BARKSDALE HENDERSON,

                Plaintiff,                **FEDERAL**

   v.                                                      **COMPLAINT**

CITY OF MILWAUKEE,                              Case No. 23CV
CITY OF MILWAUKEE POLICE
OFFICERS NICHOLAS ULATOWSKI
and CHRISTOPHER HERNANDEZ,

                Defendants.
_____

      NOW COMES the Plaintiff, by her duly authorized attorney, Walter W. Stern, and for a Complaint against the above-named Defendants, alleges and shows to the Court, as follows:

## NATURE OF THE CASE

      1.     Plaintiff PRINCESS M. BARKSDALE HENDERSON (hereinafter "Plaintiff" or "HENDERSON") brings this action against the Defendants CITY OF MILWAUKEE ("MILWAUKEE"), Officer NICHOLAS ULATOWSKI ("ULATOWSKI") and Officer CHRISTOPHER HERNANDEZ ("HERNANDEZ"), due to an alleged false arrest which occurred on December 4th, 2022 in the City of Milwaukee.

## JURISDICTION AND VENUE

      2.     That the jurisdiction of this Court is invoked in accordance with Title 28 USC §1331 and Title 28 USC § 1343, alleging a violation under Title 42 USC § 1983, commonly known as the Civil Rights Act, this being a suit in law or equity, authorized by law to be brought to provide a remedy with respect to the deprivation, under the color of state law, statutes, regulations, and customs of the State of Wisconsin, of the rights, privileges and immunities

secured by the federal law in the Constitution of the United States, pursuant to the 4th and 14th Amendments to the United States Constitution.

## PARTIES

3. Plaintiff PRINCESS BARKDALE HENDERSON (hereinafter "Plaintiff" or "HENDERSON"), is an adult resident of the State of Wisconsin, residing at 3112 60th Street, Kenosha, WI.

4. Defendant CITY OF MILWAUKEE is a municipal corporation, organized under the laws of the State of Wisconsin, is a "person" for purposes of 42 U.S.C. § 1983 and "public entity" under 42 U.S.C. § 1213(1) and had a custom, practice and procedure of discriminating against African-Americans with respect to stopping, arresting and detaining as opposed to that of Caucasians residing in the City of Milwaukee.

5. Defendant NICHOLAS ULATOWSKI ("ULATOWSKI") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Defendant ULATOWSKI was employed by the City of Milwaukee Police Department. Upon information and belief, at all times material hereto, Defendant ULATOWSKI acted pursuant to Wisconsin law, custom and statutes in effect in the State of Wisconsin in his individual capacity as a police officer for the City of Milwaukee and/or acting in individual capacity to detain, arrest, and incarcerate the Plaintiff and others similarly situated. At all times pertinent, ULATOWSKI had a duty to respect and apply the law of search and seizure pursuant to the 4th and 14th Amendments to the United States Constitution.

6. Defendant CHRISTOPHER HERNANDEZ ("HERNANDEZ") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Defendant HERNDADEZ was employed by the City of Milwaukee Police Department. Upon

information and belief, at all times material hereto, Defendant HERNANDEZ acted pursuant to Wisconsin law, custom and statutes in effect in the State of Wisconsin in his individual capacity as a police officer for the City of Milwaukee and/or acting in individual capacity to detain, arrest, and incarcerate the Plaintiff and others similarly situated. At all times pertinent, HERNANDEZ had a duty to respect and apply the law of search and seizure pursuant to the 4th and 14th Amendments to the United States Constitution.

**FACTS**

7. That on or about December 4th, 2022, Defendants ULATOWOWSKI and HERNANDEZ were called to a residence at 241 South 75th Street, Milwaukee, WI in response to a dispute between Plaintiff and one of her Landlords, Mary Adamek.

8. From the commencement of her tenancy at the residence on S. 75th Street, Plaintiff's Landlords, Mary and Patrick Adamek, had engaged in continual verbal harassment of both Plaintiff and her minor son, Brandon, who resided with her.

9. On the date in question, Mrs. Adamek confronted Plaintiff while she was in the attic of the residence moving some personal items in for storage. Plaintiff had a friend, Stephanie Kinlow, present in the attic assisting her in moving the items. Ms. Kinlow witnessed the entire encounter between Mrs. Adamek and Plaintiff, as did Plaintiff's son, Brandon Barksdale.

10. Ms. Kinlow was moving a box into what she thought was Plaintiff's attic space when Mrs. Adamek became belligerent and started cussing at Ms. Kinlow. Ms. Kinlow asked Mrs. Adamek to be respectful as she had no reason to be yelling and cussing at her. Ms. Adamek responded with "this is my mother fucking house and I can say and do as I please."

11. At that time, Plaintiff walked into the attic and asked Mrs. Adamek why she was

acting in such a manner. Mrs. Adamek responded by pushing Plaintiff, called Plaintiff a "cunt" and spitting directly in her face. Plaintiff reacted in a self-defense manner and pushed Mrs. Adamek into a chair located in the attic in order for her to protect herself from Mrs. Adamek's aggressive behavior. Mrs. Adamek got out of the chair, began walking downstairs and said she was calling the police. However, Plaintiff had already called 911 and was told the police would be dispatched.

12. The police arrived between 30 and 45 minutes later. HERNANDEZ took Plaintiff's statement and walked around the attic to view where the incident took place. Plaintiff advised HERNANDEZ that Mrs. Adamek spit in her face and called her vile names. She reiterated that she was defending herself against her aggressive behavior and that she caused no injury to Mrs. Adamek.

13. During this time, ULATOWSKI interviewed Mrs. Adamek regarding her version of events. ULATOWSKI never spoke with Plaintiff to compare the statements and determine the credibility of each.

14. Shortly thereafter, ULATOWSKI contacted HERNANDEZ via walkie-talkie and HERNANDEZ went back downstairs.

15. ULATOWSKI then asked to speak with Plaintiff wherein he immediately arrested her for felony battery, despite Mrs. Adamek being the aggressor, spitting in Plaintiff's face and cussing at her. ULATOWSKI arrested Plaintiff without consulting HERNANDEZ as to what Plaintiff had told him regarding the incident.

16. After being placed in handcuffs, Plaintiff repeatedly asked to speak to ULATOWSKI's supervisor as she felt her rights were being violated and she was not being treated in a fair manner by ULATOWSKI. Despite these requests, he refused to do so. The

witnesses, Stephanie Kinlow and Brandon Barksdale, were both asking ULATOWSKI why Plaintiff was being arrested when Mrs. Adamek had been the aggressor, which ULATOWSKI ignored.

17. Plaintiff indicated to ULATOWSKI that the handcuffs were too tight, were cutting off her circulation and were hurting her, but he ignored her and continued to type into the laptop computer contained in the front seat of the vehicle. When Plaintiff inquired as to why Mrs. Adamek was not being arrested or given a ticket, ULATOWSKI responded "because I said so." Plaintiff sat handcuffed in ULATOWSKI's squad car from approximately 3:55 until 5:15 p.m. until she was finally brought to the police station and eventually booked at approximately 6:30-6:45 p.m.

18. Plaintiff had expressed her need for her medication to be given to her every four hours to the MILWAUKEE employees when she was booked. She was already overdue for medication due to the length of time since her last dose as a result of the arrest. At approximately 11:00 p.m., Plaintiff was taken to the St. Mary's Hospital emergency room for her medication to be administered. She finally received her medication at approximately 12:15 a.m. On December 5, 2022.

19. While at the hospital, Plaintiff again reiterated her desire to speak with a supervisor. Police Officer Mercado advised Plaintiff to stop asking to speak to a supervisor and to "play nice," as she was only making it harder on herself. At approximately 2:00 a.m. on December 5th, 2022, Plaintiff was transported back to the District 3 police station.

20. Plaintiff did not receive any food, water or additional medication while at the Jail on December 5th, 2022. At approximately 2:00 p.m. on December 5th, Plaintiff was taken back to Columbia St. Mary's Emergency Room due to her not receiving her medication, and her being

hungry. By 4:00 p.m., Plaintiff had still not received any food, water or her medication, despite three requests for same. Plaintiff advised a nurse that she had missed her morning and afternoon meds, that she had not eaten anything and that she was feeling very ill.

21. Plaintiff was finally examined by a physician who determined that her mouth was very dry, she needed hydration, and that she could not be able to get her medication prior to eating food. At 5:00 p.m., Plaintiff had still not received any medication.

22. At approximately 5:30, Officer Lucky spoke with someone on the telephone who advised that Plaintiff was free to go and no longer was being held in custody. Officer Lucky left the hospital to retrieve Plaintiff's personal property. Thereafter at 5:50 p.m., while awaiting Officer Lucky's return, Plaintiff finally received her prescribed medication and something to eat and drink. It was not until being advised that Plaintiff was no longer in police custody that the hospital provided food and drink.

23. Plaintiff arrived back to her residence at approximately 6:45-7:00 p.m. on December 5th, 2022.

24. The MILWAUKEE Jail employees were deliberately indifference to Plaintiff's medical needs, contrary to the due process clause of the 14th Amendment to the United States Constitution, and to the detriment of the Plaintiff.

25. As a result of her medication being withheld by MILWAUKEE employees, Plaintiff experienced nausea, withdrawal symptoms and increased fibromyalgia pain, as my fibromyalgia was out of control by the time she was released from custody. Plaintiff missed an additional three days of work due to the effects of the MILWAUKEE employees' deliberate indifference to her medical needs.

26. Although HERNANDEZ interviewed both witness to the event, to wit: Stephanie Kinlow and Brandon Barksdale, to verify who started the altercation and the facts of the altercation, that information was never relaying to ULATOWOSKI. Instead, ULATOWSKI simply took the word of the Caucasian woman and arrested the African-American woman.

27. Mrs. Adamek did not receive even a citation for her spitting on the Plaintiff, a criminal offense, nor disorderly conduct for her yelling and cursing at Plaintiff, Stephanie Kinlow or Brandon Barksdale. This is despite HERNANDEZ advising Plaintiff, after she was placed in the police squad, that he would be writing Mrs. Adamek a citation for spitting on her.

28. Defendants ULATOWSKI and HERNANDEZ took the word of the Caucasian landlord over that of three African-Americans who not only witnessed the incident, but were victims thereof at the hands of Mrs. Adamek's disorderly and disrespectful actions.

**29.** HERNANDEZ authored the police report which is attached hereto and made a part hereof and marked **Exhibit "A."** Said report lists Mrs. Adamek as only a "victim," as opposed to a second perpetrator. The report also does not contain any of the witness statements despite HERNANDEZ speaking with the witnesses. Additionally, the original charge sought was physical abuse of an elder person – bodily harm contrary to § 940.198(2)(b), despite there being no evidence of any bodily harm to Mrs. Adamek.

**30.** Plaintiff contends ULATOWSKI was the officer who actually wrote the police report attached hereto as Exhibit "A", but had HERNANDEZ put his name on the report. Plaintiff witnessed ULATOWSKI typing the report while she was sitting in the squad car. If HERNANDEZ had actually authored the report, the report certainly should have contained the statement of the witnesses. ULTATOWSKI never spoke to the witnesses, nor did he elicit any information from HERNANDEZ regarding the witness statements.

31. That the Plaintiff was ultimately prosecuted by the Milwaukee County District Attorney's Office for misdemeanor battery contrary to § 940.19(1) and § 939.51(3)(a) of the Wisconsin Statutes, a Class A misdemeanor and disorderly conduct contrary to § 947.01(1) and 939.51(3)(b) of the Wisconsin Statutes.

32. That during the course of the Plaintiff's processing, the Plaintiff was under bond conditions and otherwise was restricted with respect to her liberty, contrary to the 4th and 14th Amendments to the United States Constitution and contrary to the equal protection clause of the 14th Amendment, all part of the Bill of Rights in the United States Constitution.

33. That the Plaintiff was required to experience the effect of a criminal prosecution with the effect being her loss of liberty pursuant to the criminal prosecution.

34. The bond conditions further restricted Plaintiff's liberty pursuant to the 4th and 14th Amendments to the United States Constitution and the equal protection clause of the 14th Amendment to the United States Constitution.

35. That with respect to Defendant ULATOWSKI, he arrested the Plaintiff based upon her race, to wit: African-American, contrary to the equal protection clause of the 14th Amendment of the United States Constitution and the 4th and 14th Amendments to the United States Constitution by arresting Plaintiff without probable cause.

36. Upon information and belief, Sargeant Byers of District 3 advised both ULATOWSKI and HERNANDEZ to get Plaintiff's paperwork to the District Attorney's Office first thing in the morning on December 5th to expedite Plaintiff's release from custody. Pursuant to Sargeant Byers, the paperwork had still not been sent to the DA's office at 1:30 p.m. ULATOWSKI and HERNANDEZ acted in a malicious and reckless manner contrary to Plaintiff's rights.

37. Plaintiff filed a citizen complaint with the Fire and Police Commission due to Defendant officers' handling of the incident. The Fire and Police Commission found that errors were made in the Defendant officers handling of the incident, to wit: ULATOWSKI's supervisor was ordered to counsel him regarding his failure to confer with his partner and the importance of obtaining both side of a dispute prior to taking form action. HERNANDEZ's supervisor was ordered to counsel him as to his failure to issue a citation to Mrs. Adamek for her disorderly conduct. A copy of the Fire and Police Commission report is attached hereto and made a part hereof and marked **Exhibit "B."**

38. As a proximate cause for the allegations of the 4th and 14th Amendments and the equal protection clause of the 14th Amendment to the United States Constitution by Defendant City of Milwaukee and Defendants ULATOWSKI and HERNANDEZ, Plaintiff suffered pain, suffering, humiliation and severe distress justifying an award of compensatory damages in an amount to be determined by the trier of fact.

39. That the Plaintiff being arrested was done maliciously and/or recklessly, and based on her race, justifying an award of punitive damages.

WHEREFORE, the Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

    1. An award of compensatory damages compensating her for injuries, both temporary and permanent, caused by the actions and inactions of said Defendants;

    2. An award of punitive damages to be determined by the jury;

    3. An award of attorney's fees and costs pursuant to Section 42 USC 1988; and

4. For any other relief this Court deems just and equitable.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY**

Dated this 14th day of October, 2023

By: <u>*electronically signed by Walter W. Stern III*</u>
Attorney Walter W. Stern III
Attorney for Plaintiff
Bar No. 1014060
920 85th St., Suite 123
Kenosha WI 53143
Phone: (262) 880-0192
Fax: (262) 997-1101
Email: wwstern111@gmail.com